Okay, we call our next case, Commonwealth of Pennsylvania Department of Human Services v. United States of America. Counsel. Good morning. May it please the Court, my name is W. Scott Foster and I represent the appellate, the Commonwealth of Pennsylvania Department of Human Services. And I may reserve three minutes for rebuttal? Yes, you may. Thank you. This case is about the federal government relying on an invalid substantive rule asserting a mere 1994 state Medicaid director letter as its sole authority to claw back more than $3 million over a 15-year period. Why, Counsel, is it not completely appropriate for the federal government to say, you are on notice of our interpretation of this rule and you took $3 million you are not entitled to have, so we are withholding it from future disbursements. I mean, that is the position they are taking. What is wrong with the assertion that the 1994 SMDL letter is a plain and clear statement of policy, upheld by the way by earlier DAB decisions? Well, if I may, Your Honor, the factors, first of all, the Social Security Act, the statute, it provides that federal reimbursement for most saliently as cost can be claimed as found necessary by the Secretary for the proper and efficient administration of the state plan. That is not a self-executing statute. There are no regulations that build on that statute. There is nothing here that is... So wait, is your position that they had to go through, they had to promulgate rulemaking? Yes. In order to say, I mean, the agencies all the time, how could it be the case that they would have to go through regulation rulemaking to describe what an administrative expense is? Because that would create, wouldn't it, an endless series of regulatory rulemakings? Because the circumstances of what is and isn't an administrative expense could be endless, couldn't it? Well, it could be, yes. Okay. Is it realistic to say, well, that requires rulemaking, or is that the kind of thing that requires only the type of discussion which took place here, which is training is not an administrative expense. That's not how we're approaching it beyond notice. If I could address your first point. Medicaid, first of all, is part of the spending clause legislation. And as a result, the states must be given fair advance notice of the conditions of the funding for those types of grants. So this is a grant given to the state. When you put in your claim, the claim was put in in a method that really didn't identify it very much. It was sort of lumped all together in a big basket. Well, Your Honor, yes. I was claimed over a 15-year period of time on our CMS-64, which is a standard claiming for administrative costs. But the agency, Health and Human Services, knew or should have known that we had been claiming it. It goes to my point that how should they have known that when you said, here are overhead costs that are buried in there, and I don't know whether it goes by PERI or P-A-R-I. We can call it PERI. The PERI costs were one of those things. Why should they have known that? Well, first of all, this Region 3 approached Pennsylvania to participate in some type of dissemination to get the word out that this type of restraint reduction initiative should be put out there. A member of the Health and Human Services staff sat on the task force that Pennsylvania established at the request of I don't think anybody disputes that the government wanted the training. The question is how were they to know that you, having done the training, would not seek reimbursement for it under some other category if it was reimbursable at all, but would instead call it an administrative expense and, in effect, just lump it in with overhead costs that it's not split out or identified at all as PERI training? Well, first of all, the restraint reduction initiative has to be part of our state plan, and it was. Nobody's disputing that. Nobody's disputing that. Okay. That's good. So, again, to your question then, specifically, if I'm understanding you, why did they not discover that we had been planning this for 15 years? Right. That is, I took part of your earlier answer to be, in effect, well, they let us claim this for 15 years and then surprised us by saying they want it back. Well, I get the U.S. government's position to be we didn't know they were claiming it for 15 years. They just were claiming overhead expenses. It was only when we did an audit that we uncovered that they were doing something we told them in 1994 not to do. Well, that's another issue, Your Honor, is very much that this is over a 15-year period of time, and we asked for discovery as part of the Departmental Appeals Board proceedings to find out just exactly what the conversation would have been, could have been, might have been as it related to funding. And, again, going back to my original point, which is a member of CMS, the Centers for Medicare and Medicaid, sat on this Restraint Reduction Initiative Task Force, participated in these meetings. The issue isn't whether a Restraint Reduction Initiative was requested or even part of the plan. It's whether, in terms of how it was billed, it should have been considered a direct medical expense or it was properly billed as overhead and lumped together with other administrative kinds of expenses. And when it was, as J.D. Greenberg pointed out, when they're lumped together, it's not clear how the federal government would be able to isolate that as something you were submitting for as an administrative expense. There's no need for additional discovery. If it's plain from the interpretive guidance that was produced all the way back in 1994, that there should have been separate accounting for direct medical training versus an administrative expense. Well, to that, Governor, I have actually two answers. The first one would be that regarding whether or not it was required training, it was, you know, again, training that was required only at the request of CMS to provide it. It wasn't part of the nursing home providers. That doesn't seem to speak to the point at all, required or not required. It was training, and they had told you training isn't reimbursable as an administrative expense. So if that is, so we can set aside, you know, somebody from CMS sat on the board. They knew we were doing this training, et cetera, et cetera. Take all that as a given. The question is how you billed it, not whether you did it. So what's your legal authority for the position that in the face of their guidance to you, don't bill training as an administrative expense. You were entitled to do that and, indeed, to do it in a way that buried it as an overhead cost and then be upset when it's uncovered in an audit and you're told we told you not to do that. Well, what's the legal basis? Well, first of all, the legal basis is this. The 1994 state Medicaid director letter is an invalid substantive rule. Why didn't we already cross that bridge with Elizabeth Blackbaugh? Pardon me? Why didn't we cross this bridge already with Elizabeth Blackbaugh? Our case law says that director's letters like this are valid interpretive guidance. It doesn't require rulemaking. But this is a ‑‑ it leads itself to ambiguous terms. In that particular case, Elizabeth Blackbaugh, they did say that a rule of substantive if Congress delegated the legislative power in the document purports to exercise that power. Even Health and Human Services acknowledges that the 1994 state Medicaid director letter was issued to describe how the secretary has chosen to exercise her discretionary power to determine what activities constitute allowable administrative costs. So in this particular case, it actually is to our favor is that the secretary has said, this is what I will delegate as necessary. Why isn't that just construing the terms of the statute? Well, the latter, of course, if we were to look at the factors as to why something is either legislative or interpretive, we would look towards the factors whether or not it had a binding legal effect. Here it clearly did. But it's not new rights or obligations. The rights and obligations are set forth in that B87, right? Yes, but that's not a self‑executing statute. There's no possible way. In fact, it would be a very daunting task for Health and Human Services to have an adjudication based on the statute alone. That's not going to happen. There's no regulations that we're following in this particular order. No, but it doesn't have to be regulatory. I mean, granted the line between legislative rules and interpretive rules is not always clear, to put it mildly. Isn't it indeed the case that it's only when there's an imposition of some new duty that you can point at an interpretation and say, hey, that ought to be a regulation? There's no new duty here. The duty was to report these things accurately and to claim administrative expenses correctly as administrative expenses and not claim things at the higher reimbursement rate that administrative expenses allow, which aren't administrative expenses. Why does that take rulemaking and not simply the director saying, we told you, don't claim training as administrative expenses? And we're allowed to say that. Well, in 2015, July 2015, the Health and Human Services issued a policy of clarification that specifically is seemingly contradictory, then, to the statement of the director. Indeed. And you desperately want that in the record, but that wasn't some regulatory statement. It was a Q&A response. I mean, they're allowed to say things like that, right? Well, okay, so you're saying that the Q&A document is a regulatory? No, I'm saying it's not regulatory. It's not a substantive rule. It's just like the 1994 SMDL letter in that it's some statement from somebody in there in the deep recesses of the CMS, which says this is what we're saying is and isn't allowable as an administrative expense. You want to rely on that, that information that just came out in the Q&A, right? Yes. Okay. If you think that's okay, how can you possibly distinguish that from the earlier letter, the SMDL letter from 1994? It's the same kind of thing, right? But it says it has different answers. Indeed. And maybe you could make the argument that what they said later, really, in fairness, they should have said earlier, but the fact that they changed their mind doesn't mean that in 1994 they didn't say what they said, does it? Well, they said what they said, but, again, they're holding it out as a longstanding, consistent policy. But they've yet to produce the source of that longstanding or consistent policy. And more so, they even said in that 1994 letter, we intend to publish this interpretation as regulations. They never did. And the case on point this court did address is the Federal Labor Relations Authority versus the Department of the Navy. And there you were met with a very similar fact pattern about what the Navy found to be necessary as far as it related to releasing names of individuals under the Privacy Act. And there, in that particular case, it was almost bet on, you found that you're not going to, quote, defer to a stale and possibly abandoned interpretation. And in that particular case, the Office of Personnel Management – Your Honor, I see you have a question. What is the upshot of your argument? I mean, you're talking about deference here, but the district court didn't accord Chevron deference to the 1994 letter. Even if we agreed with you, and these are not rules, weren't promulgated, and if we agreed that they should have been, nonetheless, why wouldn't Skidmore deference be appropriate, which I take it from the briefing was all the government's asking for here. And that's what the district court applied, and it reached a conclusion that the government's now asking us to affirm. So you're asking me, am I asking for Chevron deference? No. If all you're asking for is Skidmore deference, what does it matter whether or not these were promulgated as rules or guidance? Well, if they were promulgated as guidance, then it would be based on some type of regulation or other longstanding policy. Like the statute. Here, this is based on the statute, but the statute is not self-executing. Okay. I put counsel on a different topic. The best argument was the three-year argument about the covering. But then it occurred to me that what you were going to say was, and I quote, will cover, close quote. What you want to do is to read it as saying limited to, rather than will cover. And that was the way you were reading that point. Now, will cover could mean that that's what's covered, and beyond that, it can't be covered. And that's the way you want to read that, right? Yes, Your Honor. If you're simply referring to the grants administration manual argument, yes. The Department of Appeals Board rationale is reading an exception into that manual that just does not exist. And the case law is clear that the plain text of a manual always controls, and the obvious meaning cannot be overcome by an agency interpretation. And that would be the Christian B. Harris case, which is cited in my brief. But I think what they were saying was, well, if, in fact, you had the evidence, it went beyond the three-year period, then you could go back beyond the three-year period. But, of course, you didn't have to keep it. So by keeping it, you set yourself up for a bad result. Well, Your Honor, a point of clarification. It wasn't so much that we, quote, kept the information. We did have the financial information and the ledgers that supported from 1996 through the 2011 claiming. However, it took an audit to uncover it, right? It took an audit to uncover it. But, again, the Department of Health and Human Services knew or should have known that we had been claiming it all along. And, again- You're back to the should have known. Well, if I could, may I address Judge Greenberg's question real quick, where I wanted to make a distinction about the Grants Administration Manual. And why I wanted to bring that out was the Department of Pills Board did not allow us discovery as to the funding mechanism. So, in fact, yes, they found the records supported from 1996 to 2011, but it did not- there was no declarations. There was no discovery allowed as to what could have happened or what should have happened as far as discovery and what Jerry Ernst from HHS knew when he sat on that board. There's no dispute about what did happen in terms of the amount that was expended on the contract and that was claimed, right? Again, Your Honor- There's no dispute as to the amount that was expended on the contract and that was claimed. No, there's no- no. But it's a matter of who was going to pay for it and why. We took on- for 15 years, we took on training that we didn't have to. It could have been part of the provider training. It could have been established as the provider ratings. Actually, a higher level of recovery and participation. But, in fact, since they asked us to do it, we took it on. All right. Thanks, Mr. Foster. We'll have you back on rebuttal. Thank you. And we'll hear from counsel for the United States. Please proceed. Thank you. Thank you, Your Honor. May it please the Court. My name is Suzanne Herrick and I'm a Special Assistant United States Attorney representing the Secretary of the United States Department of Health and Human Services. There are three critical points to understanding this case. First, there's a high standard of review. The Secretary's final administrative decision can be overturned only if it's found to be unsupported by substantial evidence, arbitrary and capricious, and abuse of discretion or otherwise not in accordance with the law. The second critical point is that the Secretary's key factual findings here are supported by substantial evidence. Indeed, not only are they supported by substantial evidence, but they're not even in dispute. The Secretary found that the- Before you get into the facts, why don't you go ahead and tell us what your third critical point is. That the Secretary's decision is legally correct, Your Honor. All right.  When you say there's a very high standard of review, I want you to address Mr. Foster's assertion that, indeed, what happened in 94 was, in effect, legislative rulemaking that was not appropriately undertaken and, therefore, the reliance on it is unlawful. Well, first of all, Your Honor, it's important to note that there were two departmental appeals board decisions that were issued prior to the 1994 SMDL. So the Secretary was authorized by Congress to make determinations about which types of costs are allowable Medicaid administrative costs under the statute. Under U.S. v. Meade, the Secretary is authorized to exercise that congressional authorization in several different ways. One of which is by adjudication and the other is notice and comment rulemaking. And their assertion is, for this kind of rule, you are obligated to do notice and comment rulemaking because this is a matter of substantive law imposing duties on the states and having real financial consequences. Why is Mr. Foster wrong in that assertion and characterization of the 94 letter? I'm sorry, I just want to make sure I understand your question correctly. Why did the Secretary not issue regulations in this case or why was the Secretary not required to? Well, yeah, take both. I take their assertion to be, if you wanted to do what you said you were going to do in 94 and make it stick, you were obligated to do notice and rulemaking and that doing it in some kind of a guidance letter was insufficient and therefore you don't have a legal basis for this audit that strips them of $3 million after the fact. I didn't say that very neatly, but I understand that to be the gist of the Pennsylvania Commonwealth's argument. I'm trying to get you to meet that head on. Why are they wrong when they say that that interpretation of administrative expense, that's the kind of thing that should have happened with notice and rulemaking and therefore their reliance on it is inappropriate. Well, so first, Your Honor, the Secretary was not required to issue regulations for a couple of different reasons. Under U.S. v. Meade, the Secretary can exercise the congressional delegation through adjudication. Secondly, Congress clearly delegated the authority to the Secretary to make determinations about which costs are necessary for the proper and efficient administration of Medicaid's state plan. But you're not resting on this being necessary. You're not resting on it being necessary or a discretionary matter. I thought as a matter, your argument is as a matter of law, based on the letter, it's not an administrative expense. Isn't that right? Yes. Yes, Your Honor. All right. So get to the point here. What they're saying is this was in the nature of a legislative rule. This was a substantive rule and therefore required notice and rulemaking. Why are they wrong about that assertion? Well, okay, Your Honor. I guess I'm confused because I didn't answer your earlier question. I just want to make, to answer your earlier question, then I'll turn to the fact that this is an interpretive rule. But here we have a delegation of authority from Congress, but no directive to issue regulations on this particular issue. If Congress had wanted to require the Secretary to issue regulations concerning which costs constitute administrative costs, Congress certainly could have done so. And there are several examples in the Medicaid statute where Congress has delegated certain authority to the Secretary and said, you know, and we've got to issue regulations. Sure. But there are lots of instances where the Secretary chooses to go through notice and rulemaking where Congress hasn't said to do it, but the Secretary decides and understands I'm going to be doing something here which is in effect making substantive law, so I have to go through notice and rulemaking, right? So the lack of something from Congress to say do it by rulemaking hasn't prevented the Secretary from doing rulemaking in other contexts, has it? No. You're correct, Your Honor. My only point is that under U.S. versus me, the Secretary is not required to. The Secretary can and has the discretion to either issue the interpretation through adjudication or through notice and comment rulemaking. In this case, there was no obligation on the part of the Secretary to issue the 1994 SMDL. The Secretary certainly shouldn't be persecuted for, you know, or punished for issuing guidance that was really meant to be helpful when the Secretary was under no obligation to issue any sort of guidance at all. Yeah, no one wants to persecute anybody here. Okay. Well, let's move to the question that I tried to frame more precisely. You're saying the Secretary under me could have done this by adjudication. I take them to be saying, you know, you can decide discrete cases by adjudication, but if you want to bind people for future things and you're going to do it as to create new duties, you have to go through notice and rulemaking. You don't get to just issue a letter and say that was good enough. Are they wrong about that as a matter of law? Well, first of all, the Secretary's interpretation does not create new duties. And second of all, the Department of Appeals Board decisions are precisely on point. The 1990 New York State DAB decision and the 1991 New York State DAB decisions, it's precisely the same issue as was here. The Secretary denied as allowable Medicaid administrative costs the cost of provider training, which was directly related to the delivery of health care services, not related to the administration of the Medicaid state plan. And your claim is that this is interpretive, not legislative. Is that right? Precisely. And that's based on Third Circuit precedent, Your Honor, on a particular child versus welfare bill. We're determining whether the rule is interpretive and therefore exempt from the notice and common rulemaking procedures under the APA. The court must consider several factors. So if the rule imposes new duties on the regulated party, then it's substantive. But if the rule seeks only to interpret language already in the statute of regulation, it's interpretive. But to the extent you're relying so heavily on the 1994 letter as the basis for disallowing 15 years of expenses, that certainly seems to affect Pennsylvania's rights and obligations and indicates that the only basis for advising them about that obligation was the letter, at least as it relates to the restraints initiative and training that was being provided under the auspices of the program with the participation of representatives of the Secretary. With all due respect, Your Honor, the 1994 SMDL does not impose new duties or obligations on state Medicaid plans. The statute provides reimbursement for Medicaid administrative costs, and the Secretary's interpretation of the statute in the 1994 SMDL merely interprets the statutory phrase necessary for the proper and efficient administration of the Medicaid state plan. This is very analogous to the case in Chow. In that case, the Mines Act and its implementing regulations authorized mine inspections and set for health standards. The guidelines in the Coal Mine Health Inspection Procedures Handbook set for other procedures for inspectors to follow in determining compliance. And in that case, the court found that the guidelines did not alter the standards or place additional burdens on mine operators to comply with those standards. The guidelines outlined a plan for inspectors to effectively inspect mines, and they did not determine substantive rights. Is there something to be understood from this CMS Q&A document that is, actually, let's start with this. Would you agree that this later issued Q&A is diametrically opposed to the position that the government has taken? No, Your Honor, I disagree with that interpretation. This CMS bulletin does not mean what Pennsylvania asserts it means. Well, let's just read it here real quick. Is federal Medicaid administrative match available for providing training activities? Answer, yes. Now, I understand that this $3 million dispute is based on the actual answer being, no, so help me out. Well, Your Honor, the provider training costs discussed in the bulletin are training costs, but they're training costs by, specifically, if you look at the first sentence of the answer, they're referring to training costs that are provided by Medicaid agency employees themselves or a contracted designee. Here, you have a mere contractor of the state agency and not a contracted designee of the Pennsylvania Medicaid program. So you're hanging the distinction on it being neither an employee of the Medicaid service provider nor a designee, but somebody who has a contract? That's one of the reasons. There are several reasons why this is not applicable. It doesn't mean what Pennsylvania says it means, but in part this is a distinctly different situation than, for example, where you have state Medicaid employees engaging in training so that they can perform administrative functions under the state plan, and those administrative functions are outlined in the SMDL. Specifically, there are examples of Medicaid eligibility determinations and redeterminations. The Medicaid state agency employees need training to be able to do those administrative functions. So is the distinction training for administrative work versus training for medical services work? I don't want to oversimplify, but because this is an extreme example, it is a situation where the training that Pennsylvania was trying to claim for is clearly related to healthcare service delivery, and the opposite extreme is administrative services like utilization review, eligibility determinations, things that are clearly Medicaid administrative functions. There may be something in that gray area in between, but fortunately this is an easy case to decide. It's not one of those gray areas. So the distinction that you're relying on is training for how to deal with administrative expenses. That's an administrative expense. Training that has to do with delivery of medical services, that is not an administrative expense. Have I understood you correctly? Yes, Your Honor, and the Secretary has consistently taken that position. But there's a second reason why this informational bulletin was not applicable, because this answer taken out of context does not eliminate the statutory requirement. At the end of the day, the costs still have to be necessary for the proper and efficient administration of the state Medicaid plan. Again, you've said you're not relying on whether it's necessary or not. This is not, your argument is not turning on a discretionary determination as to the necessity of providing the administrative services here. I thought it was that what is or isn't covered as administrative, which is a legal question of law. I'm not sure I understand your question, Your Honor. I mean, you're not going to tell us that 15 years later, the Secretary can change its mind about what's necessary and then impose a disallowance. Well, but that's not the case here. The Secretary has consistently taken the position that provider training costs that are associated with health care service delivery are, in fact, not allowable Medicaid administrative costs. Isn't the easiest position for the government in this point to say, even if the Q&A meant what Pennsylvania said it meant, the Secretary is entitled to change his or her mind, and that's not what was the guidance back in 94 and all during the period. There are several easy arguments to dispose of. I mean, one very blatant argument is the fact that this was issued in 2015, and as the Medicaid disallowance notice that's in the administrative record makes clear, the period of disallowance is from, I can't recall the specific date, but was that 1996 through 2011? So this was issued after the disallowance determination and the entire relevant time period. Right. Well, now that you've mentioned that, we're past your time here, but maybe you'd answer this one further line of inquiry. They say the most you could legitimately ask for is three years. Your own then binding manual was pretty straightforward in saying, quote, the computation will cover the period the organization is required to retain records, unquote. And that's three years. So you're not entitled to claw back more. Why is that flawed in light of what the Grants Administration manual says? Well, most significantly, Your Honor, because the agency is not bound by the Grants Administration manual, and that's under the inquiry. What are people supposed to do with it? It says, quote, time period for computing disallowances, unquote. And then it says the Constitution will cover the period for records retention. Are people not allowed to rely on what is stated to them about what disallowance periods will cover? Well, the Secretary's position is that the language does not mean that for all disallowances, computation will cover only the record retention period. Here, Pennsylvania, as you know, had in fact retained the records, so the evidence permits an accurate calculation of the disallowance. There's no allegation that there was a lack of records or destruction of records. The Grants Administration manual doesn't say, you know, the disallowance period will be for however long you happen to keep records. It says the computation period will cover the period the organization is required to retain records. Well, Your Honor, I'm not going to reiterate what the Secretary's position is about what the language means, but I do think it's significant that this was an internal agency memo, and under Gadda v. Nimmo and Chao v. Rothermel, the agency can't be bound by a manual that is intended only for internal use by its own agency employees. So you can say what you want to your employees, but you can make people pay outside of that if you feel like it is what it comes down to. Well, and I'll do respect, Your Honor, we don't feel that this decision is unfair, because as you know, there were three different instances where the state Medicaid program was on clear notice that these provider training costs are not allowable as Medicaid administrative costs. Grantees are also- The point, when I read that, I thought to myself eventually, well, what they're saying is it's limited. Your cover means it's limited to three years, but you reject that, will you? Yes, Your Honor, but the Secretary's position is that the language does not mean that for all disallowances, computation will cover only the record retention period. But it's plain language that goes on to say we'll cover the following periods, and the first one, which I gather is the one applicable here, is if the costs can be identified to specific awards. But that is our case, and the specific language here that applies says the computation will cover the period the organization is required to retain records under applicable records retention requirements. That's three years. Why isn't that, by its plain terms, applicable here? Well, Your Honor, the bottom line is that the Grants Administration Manual, again, is an internal agency document intended to provide guidance for HHS's own auditors, and it was never meant to unnecessarily curtail the Secretary's ability to execute his duty under the statute, which is to make sure that to the extent the federal government is reimbursing Medicaid program costs, that it is only reimbursing appropriate allowable costs. But it's a public document, and aren't grantees entitled to rely on it, understanding that this is part and parcel of the obligations they're taking on when they have a contract? With all due respect, no, Your Honor. That's why the significance of the context of the Grants Administration Manual is so significant, because it's not intended as a public document for the grantees, even though it is public and they have access to it and they can see it. You can see in the administrative record in the supplemental appendix that I submitted, I submitted the full section of the Grants Administration Manual. At the beginning of the manual, it talks about the fact that this is the context of what the Grants Administration Manual is for and what the purpose is. So it's not intended as a notice document for grantees. It's intended as a notice document for the auditors that perform these audit functions for grants. Well, am I right when I said that because they voluntarily kept records longer, it's going to cost them more money under your reading? They didn't have to keep them that long. They did not, Your Honor, but in this case, they did. Because they did, the Secretary had an obligation to determine that everything... Would you say that again? I couldn't understand that. They did not. You're correct, Your Honor, in that they did not have an obligation to keep the records beyond three years, but because they did, the Secretary did have an obligation to go back and pull back funds that were inappropriately paid because the Secretary has an obligation to protect the public fisc and to ensure that only appropriate, allowable Medicaid costs are paid to state programs. It's a good lesson to be learned from this, though, if you're dealing with the government, not to keep records too long because if you do, you'll get hurt. And that's not identified as one of the exceptions for modifying the time period, right? Under 3B, it lists the particular exceptions that allow for modification of the period set forth under A. And the fact that someone maintained records going back farther that allows for identification of those costs to extend beyond the record-keeping period is not one of the exceptions listed. Well, again, Your Honor, the Secretary has made the position clear that the Secretary interprets it differently and, again, this is an internal use audit manual. It grants no rights is your position? Yes, Your Honor. And if it incensed states across America to burn their records after three years, you're good with that? The district court took that position that it wasn't binding, but the board, as I understand its decision, was that this was in effect, but on its terms. The terms of the manual didn't bar disallowance going beyond three years. And if we conclude that the terms of it do, is that something that needs to go back to the board to evaluate in the first instance? No, Your Honor, because the court here has de novo review, and the court here in issuing the decision can make whatever ruling that it wants on this issue surrounding the grants administration manual. I think the key thing to understand is that there's nothing in this internal agency manual that undercuts in any way the Secretary's disallowance determination of issue. All right, thank you very much. We'll go ahead and hear from your colleague on rebuttal. Mr. Foster. Thank you, Your Honor. When you start with the grants administration manual, you seem to be asking us to interpret an internal audit manual as a statute of limitations. What authority is there for treating an audit manual or any internal manual as providing a statute of limitations on the government's recovery on a disallowance? Okay, well, first of all, Your Honor, thank you. The case of the Icardi v. Shaughnessy, I'm not sure if I'm saying that the right way, but that's a United States Supreme Court case, 347 U.S. 260. The Icardi doctrine is that an agency document is binding if it affects the rights of the third parties. Hold on a second. Are you saying that no federal agency can have a document intended for internal use that doesn't automatically grant third-party rights? If I'm understanding your question, you seem to be saying that under Supreme Court precedent, any time any agency creates a document, even if it's intended solely for internal use, that that has the effect of giving rights to third parties, like the state of Pennsylvania. You've heard your colleague here, Ms. Yerkes, say repeatedly, that's an internal manual, it's meant for the auditors, it's not meant for anybody else. Yes, it's out in the public, but it doesn't give anybody rights. It's just for guidance for the employees. You seem to be taking the position that, no, if they wrote it, they have to live with it, and we have the right to assert it, as if it were a statute of limitations. Do you have any legal authority for that position? Yes, I do. The American Foreign Lines versus Blackwell Freight Services, it's 397 U.S. 532, and a very similar case, but it's where a manual is analyzed using the standard that administrative agencies must follow their own procedural rules, even if they are gratuitous and self-imposed. So if they produce a manual that employees are to follow in order to do their jobs, then yes, they should be bound by it. And as your Honor said earlier, the Grants Administration Manual, it was in effect during part of the disallowance. But this isn't a procedural rule. This isn't an argument that they failed to abide by some procedure that they bound themselves to. You are, in effect, asking that this be interpreted as a statute of limitations, limiting their substantive liability. Yes, it should limit the liability to three years. I mean, ultimately, we'd want the entire disallowance to be vacated because it was based on an invalid substantive rule. But the alternative, yes, the limitation would be a three-year look-back period, the time that we were required to keep the record. If there were really a statute of limitations here, wouldn't we expect to see it in a statute? In the enabling statute? The Social Security Act? In any statute. It's not there. There is no statute that addresses that. But we, you know, and if I may. Give you a moment quickly. Just to address the two departmental appeals board's decisions that my colleague has mentioned. I want to be very clear that those cases are 1990 and 1991 in the New York decisions, and those, of course, predate any time that the records would have been kept in any type of organized fashion, which I believe, according to CMS's own brief on page 79, that they weren't organized until 1994. And more importantly, the — I take their citation of those cases, Mr. Foster, to be for the point of saying, not only did they have this 94 letter, they had access to and were reasonably on notice of this agency's interpretation of what could and could not be called an administrative expense. So they knew when they decided to call this stuff overhead that they shouldn't be doing it. That's how — that's my understanding of why the U.S. government cites to those earlier DAP. But even then, the departmental appeals board would not be vested with the authority to make policy. But they have the authority to adjudicate and to make rulings, and you had access to those rulings, right? Do we have access to those rulings from 1990 and 1991? Sure. I'd have to go back and look, but conceivably, yes. Yeah, okay. Well, we've got your argument, and we appreciate your argument from both sides. Thank you very much.